No. 39,330

O. F. SULLIVAN, *Appellee,* v. LEE J. SPROULE and E. G. FOY, Co-partners, doing business as FOY-SPROULE AMUSEMENT COMPANY, *Appellants.*

(269 P. 2d 1015)

Opinion filed May 8, 1954.

*I. H. Stearns,* of Wichita, argued the cause, and *E. P. Villepigue,* and *Leo R. Wetta,* both of Wichita, were with him on the brief for the appellants.

*Ferd E. Evans, Jr.,* of Wichita, argued the cause, and *Lester L. Morris, Verne M. Laing,* and *Ralph R. Brock,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

THIELE, J.: This was an action to recover a sum of money claimed to be due under the contract later mentioned. The defendants' demurrer to plaintiff's amended petition was overruled and they appeal.

Under date of February 28, 1945, the defendants, as parties of the first part, entered into a contract with plaintiff, as party of the second part, containing four "Whereas" clauses and thirteen "contractual"

paragraphs, the gist of which follows: In the "Whereas" clauses, it was stated that first parties were erecting a drive-in theatre on a highway southwest of the city of Wichita and planned to operate it and desired to employ second party as permanent booker and buyer of films; that second party had for many years owned and operated motion picture theatres and was in a position to be of valuable service and was willing to assume the duty of buying and booking pictures for the theatre, and it was agreed:

1. First parties hired second party as buyer and booker of films.

2. Pertained to matters not now material and that it was understood duties of second party were limited to booking and buying films.

3. Second party was to have full, complete and sole authority to contract all pictures for the theatre and he agreed to use his best efforts and conscientiously select films that would produce the greatest revenue for the theatre.

4. Second party was allowed $12 per week as necessary expense in the employment of a booking agency in Kansas City to assist him in order to hold to a minimum necessary traveling expense of second party.

5. First parties were to pay second party as compensation for his services five percent of the box office receipts, less designated taxes.

6. Provided for keeping of books and records by first parties and access to second party for purposes of inspection.

7 and 8. Provision for a corporation and not of present importance.

9. Second party agreed not to erect a drive-in theatre in a specified part of Sedgwick county, and first parties agreed not to expand their drive-in theatre business in specified territory "during the term of this contract."

10. Second party to have no voice in the management of the theatre other than the booking and buying of films.

11. Provisions that if either of first parties desired to sell, who should be possible purchaser.

12. Provision that contract binding upon the parties, their heirs, successors and assigns so long as second party owned theatres in the city of Wichita "and so long as the second party is living and is physically and mentally capable of performing the services hereunder."

13. Although stated at length the substance was that if first

parties violated the contract with reference to employment it would be difficult to ascertain the damages, or if they should violate their agreements as to expanding their business, or if second party should violate his agreements as to erection of a theatre in the prohibited area, it would be difficult to ascertain the damages, and the parties agreed with each other that in event of violation in either of said events the damages should be determined as $10,000.

On September 12, 1952, plaintiff, the party of the second part in the above contract, commenced an action alleging violation thereof and claiming the sum of $10,000 as liquidated damages. On defendants' motion all reference to liquidated damages was stricken from the petition, and thereafter the plaintiff filed his amended petition, hereafter referred to as the petition.

In his petition, plaintiff alleged execution of the contract, a copy of which was attached to the petition, and that under its terms he was to have full, complete and sole authority to contract all motion pictures for the theatre, and that up to February, 1952, he performed in a proper manner each and every duty devolving upon him under the contract; that on February 7, 1952, defendants notified him that thereafter they would no longer comply with the contract of employment, and had since booked all motion pictures for their theatre either directly from film distributors or through booking agents other than plaintiff; that notwithstanding such breach of the contract plaintiff always had stood ready, willing and able to perform all his obligations under the contract. Allegations as to the amount of business done in the years 1950 and 1951 are set forth and that the business has been increasing in gross volume; that plaintiff's expectancy was 17.78 years and his prospective earnings were $106,204.29 and he had been damaged in that amount for which he prayed.

Defendants demurred to the petition on the ground no cause of action was stated and on the further ground that the damages sought were so wholly speculative, uncertain and conjectural they failed to form a basis for recovery. As has been noted this demurrer was overruled and defendants appealed. They specify error in the particulars hereafter discussed.

In the statement of their first contention, appellants say that the contract is unenforcible as it lacks consideration and mutuality. They present no argument as to lack of consideration and that phase will not be discussed. Insofar as lack of mutuality is con-

cerned the argument is brief. They direct attention to the clause of the contract as to liquidated damages and argue that under that clause plaintiff would be under no liability—that his liability thereunder was in the event he erected a theatre in the prohibited area. Conceding it to be true that the clause as to liquidated damages is limited, that clause does not pretend to release plaintiff from all other liabilities under the entire contract. Appellants quote excerpts from the following cases, on the general proposition that both parties must be bound to duties under the contract, lacking which there is want of mutuality. We have examined these cases and find that on the facts they are distinguishable and not decisive here.

In *Swart v. Huston*, 154 Kan. 182, 117 P. 2d 576, it was held there was no contract covering duration of employment. In *Grow v. Davis*, 110 Kan. 214, 203 Pac. 683, the plaintiff was under no obligation to perform. In *Fitzstephens v. Whan*, 113 Kan. 650, 216 Pac. 269, the defendant agreed to make payments to the plaintiff, but plaintiff did not agree to do anything. In *Van Deren v. Heineke & Co.*, 122 Kan. 215, 252 Pac. 459, it clearly appeared that plaintiff was under no duty to perform, and the same may be said for *Sharpless v. J. B. Kirk Gas & Smelting Co.*, 128 Kan. 722, 280 Pac. 788. We have heretofore analyzed the contract. It is not debatable but that each party agreed with the other to perform specified duties for a specified time; that none of the provisions of the contract gave either party any option to refuse performance, but on the contrary bound each to perform, and it may not be said the contract lacked mutuality of obligation.

Appellants next contend they had the right to discharge appellee at any time they chose. This contention is based solely on the proposition that the twelfth paragraph of the contract provided for an indefinite hiring, and that in such circumstance the hiring is one at will and either party may terminate the contract and authorities to that effect are cited. They need not be analyzed for it may be conceded for present purposes that if the premise is true, the conclusion is correct. In our opinion the premise is not true. The contract perhaps could have been more artfully drawn but it definitely provided for the performance of duties by the appellee for the benefit of the appellants so long as appellee owned and controlled theatres in the city of Wichita and as long as he was mentally and physically capable of the performance of his duties.

These provisions did fix a time when the contract would terminate, and though it may be conceded that the happening of either event was a contingency the date of which could not be foretold when the contract was made and in that sense was indefinite, that it was otherwise a definite hiring for the term fixed is not open to debate. We shall not pursue the subject of contracts of hire, their duration, and the right of the employer to discharge the employee or the right of the employee to quit as the discussion would cover a field not involved here, in view of the contract provisions. As we view the matter the only question is whether the fact that termination of the contract is dependent on what may be termed a contingency, leaves the terms of employment so indefinite it may be said the hiring is at will. We think that may not be said, in view of our decision in *Pierson v. Milling Co.*, 91 Kan. 775, 139 Pac. 394, where a situation much more favorable to the employer existed than obtains here, and where it was held:

"A contract by which an employer agrees to furnish an injured employee employment for life is not too indefinite for enforcement, although it makes no provision for the kind of work to be done or the amount of compensation." (Syl. ¶ 4.)

And as bearing on the question see *Scott v. Southwest Grease & Oil Co.*, 167 Kan. 171, 205 P. 2d 914, syl. ¶ 5.

And finally, appellants contend that the contract is unenforcible because the damages appellee seeks to recover are speculative and conjectural and there is no reasonable basis on which they can be predicated and that the petition therefore is demurrable. The gist of appellants' argument is that profits which are so conjectural that they cannot be measured by the usual rules of evidence to a reasonable degree of certainty are not recoverable, and attention is directed to many situations where, perhaps, the operation of the theatre may be suspended, or the business may not prosper in the future, and other circumstances which the evidence might develop but which are lacking in the allegations of the petition. It is true that the damages which appellee seeks are predicated on a percentage of the gross receipts, less taxes, and in that sense the appellee seeks to recover for future profits, but we need not review authorities and decisions where for one reason or another, a recovery was denied. We are presently concerned with the alleged facts that the theatre business in question had been established, was in operation, and had been taking in gross receipts in which appellee was entitled to participate. If on trial the appellee sustains the

proposition that the business had been in successful operation for such time as to give it permanency and that it was making earnings which could be reasonably ascertained, and appellee was denied his interest by the wrongful acts of appellants he may recover as the proof may show (*States v. Durkin,* 65 Kan. 101, 68 Pac. 1091) for where the business is not a new or untried one and has been established to such an extent that a safe basis can be found on which to estimate them, anticipated profits may be allowed as damages on breach of the contract (*Gas Co. v. Bailey,* 77 Kan. 296, 94 Pac. 258). The rules last noted were followed in *McCracken v. Stewart,* 170 Kan. 129, 136, 223 P. 2d 963. We are not presently concerned with any difficulties appellee may have in making his proof, nor with any possible defenses the appellants may plead and prove, but only with the allegations of appellee's petition. We shall not discuss appellee's contention that in any event if the contract was made by appellants and breached by them, he is entitled to recover nominal damages. Appellants' contention that the petition is demurrable for the reasons last discussed cannot be sustained.

It follows that the trial court's ruling on the demurrer must be and it is sustained and its judgment affirmed.