IN THE SUPREME COURT OF THE STATE OF IDAHO
Docket No. 37294

ADA COUNTY HIGHWAY DISTRICT,    )
                                     )        Boise, May 2011 Term

    Petitioner-Appellant,        )

                                     )        2011 Opinion No. 56

v.                                   )

                                   )        Filed: May 25, 2011

IDAHO PUBLIC UTILITIES         )

COMMISSION and IDAHO POWER    )        Stephen W. Kenyon, Clerk

COMPANY,                         )

                                   )

    Respondents.               )

Appeal from the Idaho Public Utilities Commission.

The order of the Commission is <u>set aside</u>.

Merlyn W. Clark, Hawley Troxell Ennis & Hawley LLP, Boise, argued for appellant.

Weldon B. Stutzman, Deputy Attorney General, Boise, argued for respondent Idaho Public Utilities Commission.

Lisa D. Nordstrom, Boise, argued for respondent Idaho Power Company.

EISMANN, Chief Justice.

This is an appeal from an order of the Public Utilities Commission revising Idaho Power Company's tariff with respect to relocating utilities within public rights-of-way. We set aside the order of the Commission.

## I. FACTS AND PROCEDURAL HISTORY

On October 30, 2008, Idaho Power Company (Company) filed an application with the Idaho Public Utilities Commission (IPUC) seeking to modify Rule H, its tariff. Some of the proposed amendments applied to the relocation of utilities' facilities within public rights-of-way. The City of Nampa and the Association of Canyon County Highway Districts (Intervenors) were granted permission to intervene in the proceedings, and they each filed written comments objecting to Section 10 of the proposed amendments. Even though it was not an intervenor in

the proceedings, the Ada County Highway District (ACHD) also filed written comments objecting to proposed Section 10.

On July 1, 2009, IPUC issued an order approving proposed Section 10. On July 22, 2009, ACHD filed a petition for reconsideration and clarification. It argued that by adopting Section 10, IPUC exceeded its authority; that Section 10 was unconstitutional; that Section 10 was an unlawful attempt to amend or abrogate the common law rule requiring a utility to relocate its facilities placed in a public right-of-way at its expense; and that the definition of "third party beneficiary" in Section 10 was too broad. On the following day, Intervenors also filed petitions for reconsideration. They contended that Section 10 exceeded IPUC's jurisdiction and that the definitions of "third party beneficiaries" and "local improvement districts" used in Section 10 needed to be clarified.

On August 19, 2009, IPUC issued an order granting the motions for reconsideration. It ordered Company to update the language of Section 10, including clarifying the definitions of "third party beneficiaries" and "local improvement districts." It further provided that once Company had done so, the parties could file additional briefs if necessary. Company filed the modifications on August 28, 2009, which included modified definitions of some of the terms used.

On September 11, 2009, Intervenors filed a joint brief in support of their petitions for rehearing. In that brief, they argued that Section 10 exceeded the jurisdiction of IPUC, was unconstitutional, and was contrary to the common law. They also argued that the revised definition of "third party beneficiaries" was still too broad.

On the same day, ACHD filed its brief. It argued that as modified, Section 10 and the revised definitions encroached upon ACHD's exclusive jurisdiction over its highways and rights-of-way; exceeded IPUC's jurisdiction; are unconstitutional; attempted to amend or abrogate the common law rule that utilities must move their facilities from public rights-of-way at their own expense; and contained an overly broad definition of "third party beneficiary."

IPUC held oral argument on the motions for reconsideration for October 13, 2009, and on November 30, 2009, it issued its final order (Order No. 30955). It granted the motions for reconsideration in part and denied them in part and added Sections 1 and 10, as revised, and Section 11 to the tariff (Rule H). ACHD then appealed.

2

## II. ISSUES ON APPEAL

A. Should this appeal be dismissed for lack of a case or controversy between IPUC and ACHD?

B. Does Section 10 usurp ACHD's exclusive jurisdiction over public rights-of-way?

C. Does Section 10 exceed the authority of IPUC?

D. Does Section 11 exceed the authority of IPUC?

## III. ANALYSIS

Appeals from IPUC are heard on the commission record as certified by it. I.C. § 61-629. Review on appeal is limited to "whether the commission has regularly pursued its authority, including a determination of whether the order appealed from violates any right of the appellant under the constitution of the United States or of the state of Idaho." *Id.* This Court can either affirm the order of the Commission or set it aside in whole or in part. *Id.*

## A. Should This Appeal Be Dismissed for Lack of a Case or Controversy Between IPUC and ACHD?

IPUC contends that this appeal should be dismissed because no justiciable controversy exists between it and ACHD. It reasons, "Because Section 10 and Resolution 330 are substantially similar, Section 10 by its terms is not in effect for ACHD's projects." That argument is based upon the provision in Section 10 stating that it does not apply to relocations where the public road agency has adopted legally binding guidelines with provisions that are substantially similar to Section 10 for allocating utility relocation costs between the Company and other parties. Thus, as long as ACHD keeps its Resolution 330, that resolution will control the allocation of the cost of relocating the Company's utilities to third parties. IPUC also addresses various arguments made by ACHD, pointing out why they are without merit.

A justiciable controversy must be " 'a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.' " *Harris v. Cassia County*, 106 Idaho 513, 516, 681 P.2d 988, 991 (1984) (quoting from *Aetna Life Insurance Co. of Hartford, Connecticut v. Haworth*, 300 U.S. 227, 241 (1937)). This case presents a real and substantial controversy regarding the legality of the amended tariff. Specifically, ACHD contends that it infringes upon its exclusive jurisdiction to determine whether a third party is

required to reimburse a utility for all or a portion of its cost of relocating the utility's distribution facilities that are in a public right-of-way and exceeds the authority granted to IPUC by the legislature. IPUC believed that there was enough of a controversy regarding those issues that it adopted the amendments to Idaho Power's tariff. The resolution of those issues would not be an advisory opinion based upon a hypothetical state of facts. It will be based upon the law and the provisions of the tariff. Therefore, we will not dismiss the appeal.

**B. Does Section 10 Usurp ACHD's Exclusive Jurisdiction Over Public Rights-of-Way?**

ACHD contends that Section 10 usurps ACHD's exclusive jurisdiction over public rights-of-way. ACHD's commissioners have "exclusive general supervision and jurisdiction over all highways and public rights-of-way within their highway system." I.C. § 40-1310(1). With the permission of the commissioners, Company has the right to construct its electricity transmission facilities within ACHD's public rights-of-way "in such manner and at such places as not to incommode the public use of the road, highway, [or] street." I.C. § 62-705. However, Company's right to use the public rights-of-way is permissive only. *State ex rel. Rich v. Idaho Power Co.*, 81 Idaho 487, 498, 346 P.2d 596, 601 (1959). "[T]he right of utilities to the use of public thoroughfares is not and cannot be regarded as a permanent property right." *Id*. If ACHD determines that Company's facilities incommode the public use of any road, highway, or street, ACHD can require Company to relocate the facilities. *Id*.

ACHD contends that by adopting Section 10 IPUC has sought to usurp ACHD's exclusive jurisdiction. Section 10 provides:

> The Company often locates its distribution facilities within state and local public road rights-of-way under authority of Idaho Code § 62-705 (for locations outside Idaho city limits) and the Company's city franchise agreements (for locations within Idaho city limits). At the request of a Public Road Agency, the Company will relocate its distribution facilities from or within the public road rights-of-way. The Relocation may be for the benefit of the general public, or in some cases, be a benefit to one or more Private Beneficiaries. Nothing in this Section bars a Local Improvement District (LID) from voluntarily paying the Company for Relocations.

> The Company's cost of Relocations from or within the public road rights-of-way shall be allocated as follows:

> a. Road Improvements Funded by the Public Road Agency - When the Relocation of distribution facilities is requested by the Public Road

4

Agency to make roadway improvements or other public improvements, the Company will bear the cost of the Relocation.

b. <u>Road Improvements Partially Funded by the Public Road Agency</u> - When the Public Road Agency requires the Relocation of distribution facilities for the benefit of itself (or an LID) and a Private Beneficiary, the Company will bear the Relocation costs equal to the percentage of the Relocation costs allocated to the Public Road Agency or LID. The Private Beneficiary will pay the Company for the Relocation costs equal to the percentage of the road improvement costs allocated to the Private Beneficiary.

c. <u>Road Improvements not Funded by the Public Road Agency</u> - When the Relocation of distribution facilities in the public road rights-of-way is solely for a Private Beneficiary, the Private Beneficiary will pay the Company for the cost of the Relocation.

d. <u>Prior Right of Occupancy</u> - When the Company and the Public Road Agency have entered into an agreement regarding a Private Right of Occupancy, the costs of Relocation in such designated area will be borne by the Public Road Agency, or as directed in the agreement.

All payments from Private Beneficiaries to the Company under this Section shall be based on the Company's Work Order Cost.

This Section shall not apply to Relocations within public road rights-of-way of Public Road Agencies which have adopted legally binding guidelines for the allocation of utility relocation costs between the Company and other parties that are substantially similar to the rules set out in Section 10 of Rule H.

First, ACHD states, "Through the adoption of Section 10 of Rule H, the IPUC will effectively dictate the policies and procedures of Public Road Agencies regarding electric utility relocations." It does not point to any provision in Section 10 by which IPUC attempts to do so.

Next, it asserts that Section 10 will "impact the operation of Public Road Agencies in their negotiations and relations with third parties and developers concerning road improvement projects." The contention is that one of the bargaining chips ACHD has in negotiating with developers is the authority to rule upon whether the developer will have to reimburse Company for any of the cost of relocating its electrical distribution facilities. ACHD can get a developer to pay more money to it if the developer does not have to reimburse Company. That ACHD finds that authority useful does not mean it is a power granted to it by the legislature.

5

Next, it claims that Section 10 will "regulate and control electric utility relocations by assigning financial liability for such relocations." Section 10 seeks to require a "Private Beneficiary" to pay all or a portion of the costs of relocating Company's distribution facilities in a public right-of-way if such relocation was for the Private Beneficiary's benefit. A Private Beneficiary would not include ACHD or other entity exercising the police power delegated to it by the State.[1] ACHD does not explain how requiring a third party to reimburse Company for relocation costs enables IPUC to "regulate and control electric utility relocations." ACHD only argues that it has exclusive authority "to assign financial responsibility for utility relocation costs." It argues as follows:

> [I]t [Section 10] regulates who pays for utility relocations, including detailed regulations as to whether a private developer is required to reimburse public utilities for their utility relocation costs. Specifically, Resolution 330 [adopted by the ACHD] requires a private developer to reimburse utilities for the cost of utility relocations that result from public road projects made for the benefit of that private developer. However, Resolution 330 provides that the private developer is not required to reimburse a utility, even if the private developer pays for the public road project, if ACHD had already scheduled the public road project to be made within three years after the project was commenced. [Citations to record omitted.]

In support of this asserted exclusive authority to determine whether a private party must reimburse Company, ACHD quotes subsections (1) and (8) of Idaho Code § 40-1310, which state as follows:

**(1) The commissioners of a highway district have exclusive general supervision and jurisdiction over all highways and public rights-of-way within their highway system, with full power to construct, maintain, repair, acquire, purchase and improve all highways within their highway system, whether directly or by their own agents and employees or by contract. Except as otherwise provided in this chapter in respect to the highways within their highway system, a highway district shall have all of the powers and duties that would by law be vested in the commissioners of the county and in the district directors of highways if the highway district had not been organized. . . . .**

. . . .

---

[1] Section 1 of the tariff provides:

Private Beneficiary is any individual, firm or entity that provides funding for road improvements performed by a Public Road Agency or compensates the Company for the Relocation of distribution facilities as set forth in Section 10. A Private Beneficiary may include, but is not limited to, real estate developers, adjacent landowners, or existing customers of the Company. [Underlining in original.]

(8) The highway district board of commissioners shall have the <u>exclusive general supervisory authority</u> over all public highways, public streets and public rights-of-way under their jurisdiction, <u>with full power to</u> establish design standards, <u>establish use standards, pass resolutions and establish regulations</u> in accordance with the provisions of title 49, Idaho Code, and control access to said public highways, public streets and public rights-of-way. [Emphases added by the ACHD.]

None of powers granted to ACHD in the above-quoted statutes provide that ACHD can determine whether a third party is required to reimburse a utility for all or a portion of its cost of relocating the utility's distribution facilities that are in a public right-of-way. ACHD contends that such power is an implied power, based upon Idaho Code § 40-1312, which provides:

The grant of powers provided in this chapter to highway districts and to their officers and agents, shall be <u>liberally construed, as a broad and general grant of powers</u>, to the end that the control and administration of the districts may be efficient. The enumeration of certain powers that would be implied without enumeration shall not be construed as a denial or exclusion of other <u>implied powers</u> necessary for the free and efficient exercise of powers expressly granted. [Emphases added by the ACHD.]

Section 10 provides that when Company is required to relocate its distribution facilities within a public right-of-way for the benefit of a Private Beneficiary, such entity may be required to pay some or all of the costs incurred by Company in doing so.[2] When ACHD determines that a utility must remove or relocate its facilities that are within a public right-of-way, ACHD is not required to bear any of the utility's cost of doing so. *Mountain States Tel. & Telegraph Co. v. Boise Redevelopment Agency*, 101 Idaho 30, 33, 607 P.2d 1084, 1087 (1980). The utility must proceed with the relocation. Because ACHD does not bear any of that cost, there is no need for it to have the authority to determine whether some third party should reimburse the utility for all or a portion of the cost. Whether some third party reimburses the Company after the relocation has been completed is not an issue of concern to ACHD. The utility is required to complete the relocation regardless of whether it is reimbursed by a third party. Determining whether there

---

[2] IPUC had initially approved a version of Section 10 that would have required the Private Beneficiary to prepay its portion of the costs. IPUC deleted that requirement based upon the objection that it may hinder the timely completion of improvements and relocations within the public rights-of-way. Requiring prepayment could certainly infringe upon ACHD's express powers because it could delay road improvement projects. However, ACHD has not shown that it must have the implied power to determine whether a Private Beneficiary must reimburse Company for relocating its distribution facilities.

7

will be reimbursement from a third party is simply not necessary in order for ACHD to freely and efficiently exercise powers expressly granted to it. Such reimbursement does not involve any sums that ACHD will incur while supervising, constructing, maintaining, repairing, acquiring, purchasing, and improving its highways or exercising any of its other powers.

ACHD's exclusive jurisdiction over its highways and rights-of-way does not extend to matters that do not involve its legitimate interests. For example, in *Village of Lapwai v. Alligier*, 78 Idaho 124, 299 P.2d 475 (1956), the city enacted an ordinance terminating a waterworks franchise and ordering the franchisees to remove their pipes and apparatus from the city streets. When the franchisees failed to do so, the city sued to force the removal. It was stipulated that the pipes and apparatus were buried under the streets and did not interfere with public travel or use of the surface of the streets. The trial court ordered the franchisees to remove their pipes and apparatus, but on appeal we modified that order. We ruled that because the buried pipes and apparatus did not interfere with the usual use of the surface of the streets, the order should be modified to permit the franchisees to remove them or not at their option. *Id*. at 130, 299 P.2d at 479.

Finally ACHD relies upon that portion of Idaho Code § 40-1312 which provides that the grant of powers to highway districts "shall be liberally construed, as a broad and general grant of powers, to the end that the control and administration of the districts may be efficient." It argues: "Through Resolution 330, ACHD is able to efficiently regulate the relocation of all utility and sewer companies within the rights-of-way through one single set of regulations. That efficiency is lost if IPUC regulates electric utility relocations on public rights-of-way through Section 10 of Rule H." As an example of the alleged inefficiency that Section 10 will cause, it points to scheduling disputes that may arise as to which entity will relocate its facilities first. It argues:

> If Resolution 330 governs as to all utility and sewer companies, ACHD can efficiently resolve the dispute. However, if Rule H governs as to Idaho Power, then ACHD can only resolve the disputes involving the other utilities and IPUC has jurisdiction over disputes involving Idaho Power, which may result in scheduling conflicts.

Missing from ACHD's argument is any reference to a provision in Section 10 that purports to prevent ACHD from resolving such disputes involving Company, or that purports to have IPUC resolve those disputes, or that purports to regulate electric utility relocations on

8

public rights-of-way. ACHD has not pointed to any provision in Section 10 that infringes upon ACHD's power or jurisdiction.

## C. Does Section 10 Exceed IPUC's Authority?

ACHD also contends that IPUC exceeded its authority and jurisdiction by adopting Section 10. "The Idaho Public Utilities Commission has no authority other than that given to it by the legislature. It exercises a limited jurisdiction and nothing is presumed in favor of its jurisdiction." *Alpert v. Boise Water Corp.*, 118 Idaho 136, 140, 795 P.2d 298, 302 (1990). The legislature has vested IPUC with "power and authority to supervise and regulate every public utility in the state and to do all things necessary to carry out the spirit and intent of [the Public Utilities Law]." I.C. § 61-501. "The public utilities law (Chapters 1-7 of Title 61, Idaho Code) establishes a comprehensive scheme for the regulation of investor-owned public utilities by the Idaho Public Utilities Commission." *Alpert,* 118 Idaho at 140, 795 P.2d at 302.

In *Washington Water Power Co. v. Kootenai Environmental Alliance*, 99 Idaho 875, 881, 591 P.2d 122, 128 (1979), we stated "that the legislature intended to limit the Commission's authority under I.C. § 61-502 and § 61-503 to those practices which affect the rates, fares, tolls, rentals, charges or classifications of the public utility." Idaho Code § 61-507 provides that IPUC "shall prescribe rules and regulations for the performance of any service or the furnishings of any commodity of the character furnished or supplied by any public utility."

In its final order, IPUC held that it had the authority to adopt Section 10 based upon Idaho Code §§ 61-502, 61-503, and 61-507. It held that relocating distribution facilities for the benefit of a private party is a "service" under those statutes. It stated:

> First, the Commission affirms that highway agencies have the authority to determine when Idaho Power must relocate its distribution facilities and whether any other party is responsible for paying for the road improvement costs. However, once the highway agency determines that a private party (e.g., a developer) must shoulder all or a portion of the road improvement costs, then it is the Commission that establishes the costs for utility relocation pursuant to Idaho Code §§ 61-502, 503, and 507. This is the purpose of Section 10. The Commission's ability to set relocation costs arises only <u>after</u> the highway agency determines that it or another party is responsible for road improvement costs. . . . . [Emphasis in original.]
>
> . . . .
>
> Third, we reject ACHD's argument that the relocation of Idaho Power's facilities from the public right-of-way is not a "service or product" provided by

9

the utility. . . . The relocation of Company facilities is a "practice" or "service" subject to our jurisdiction. Idaho Code §§ 61-502 and 61-503 authorize the Commission to establish the just and reasonable rate or charge "for any <u>service</u> or products or . . . the rules, regulations, <u>practices</u>, or contract . . . affecting such rates." In addition, Idaho Code § 61-507 provides that the Commission "shall prescribe rules and regulations for the performance of <u>any service</u>." [Emphasis in original.]

Relying upon Idaho Code § 61-332A, ACHD contends that the relocation of distribution facilities does not meet the statutory definition of "service." It argues: "[T]he relocation of a utility line is not within the scope of Idaho Code §§ 61-502 and 61-503 because it is not a 'service.' Idaho Code § 61-332A defines 'Electric service' as 'electricity furnished to an ultimate consumer by an electric supplier.' "

The fallacy of this argument is that the definitions in section 61-332A do not apply to Idaho Code §§ 61-502, 61-503, and 61-507. Section 61-332A expressly states that its definitions apply to "this act," I.C. § 61-332A, which is the Electric Supplier Stabilization Act. Idaho Code § 61-332 states, "This act includes sections 61-332 through 61-334C, Idaho Code, and shall be referred to herein as 'this act' and may be cited and referred to as the 'Electric Supplier Stabilization Act.' " I.C. § 61-332. Because sections 61-502, 61-503, and 61-507 are not part of that Act, the definition in section 61-332A does not apply to them.

Idaho Code § 61-501 states that IPUC "is hereby vested with power and jurisdiction . . . to do all things necessary to carry out the spirit and intent of the provisions of [the Public Utilities Law]," which includes sections 61-502, 61-503 and 61-507. IPUC's construction of the word "service" in this context is reasonable. Idaho Code § 61-507 states, "The commission shall prescribe rules and regulations for the *performance of any service* or the furnishing of any commodity of the character furnished or supplied by any public utility . . . ." (Emphasis added.) The performance of any service indicates action by the public utility, which reasonably includes removing and reinstalling distribution facilities. However, holding that the relocation of distribution facilities can be the performance of a service under section 61-507 does not mean that Section 10 is a valid exercise of IPUC's power.

IPUC certainly has the authority to determine the costs that Company can charge a private person who requests services from Company. However, Section 10 goes further than

that. Under Section 10, when a Public Road Agency[3] requires that Idaho Power relocate its distribution facilities, IPUC has the authority to determine whether the relocation, in whole or in part, is for the benefit of a third party. If it determines that it is, then Section 10 would allocate all or a portion of the costs of relocation to that third party. Thus, IPUC could require a third party to pay for services that the third party did not request from Company if IPUC determined that a relocation required by a Public Road Agency benefited the third party. IPUC has not pointed to any statute granting it that authority.

During oral argument, IPUC admitted that it could not adjudicate the dispute between the third party and Company. It also admitted that if Company wanted to recover relocation costs from a third party, it would have to sue in court and Section 10 would not apply.[4] In addition, IPUC admitted that the percentage of road improvement costs that the third party agreed to pay the road agency may bear no relationship to the percentage of the relocation costs that allegedly benefit the third party.

We hold that the provisions of Section 10 discussed above exceed the authority of IPUC. Therefore, we set aside Section 10. I.C. § 61-629.

**D. Does Section 11 Exceed IPUC's Authority?**

ACHD also argues that Section 11 of the amended tariff infringes upon its exclusive jurisdiction over public rights-of-way and is an unauthorized attempt to exercise jurisdiction over public road agencies. Section 11 states:

> 11. Eliminating or Minimizing Relocation Costs in Public Road Rights-of-Way
> Pursuant to Idaho Code § 40-210, the Company will participate in project design or development meetings upon receiving written notice from the Public Road Agency that a public road project may require the relocation of distribution facilities. The Company and other parties in the planning process will use their best efforts to find ways to eliminate the cost of relocating utility facilities, or if elimination is not feasible, to minimize the relocation costs to the maximum

---

[3] A "Public Road Agency" is defined in Section 1 of the tariff as "any state or local agency which constructs, operates, maintains or administers public road rights-of-way in Idaho, including where appropriate the Idaho Transportation Department, any city or county street department, or a highway district."

[4] None of the parties posited a legal theory upon which Company could recover from the third party, and we express no opinion on that issue.

11

extent reasonably possible. This provision shall not limit the authority of the Public Road Agency over the public road right-of-way.

The second sentence in Section 11 states, "The Company *and other parties* in the planning process will use their best efforts to find ways to eliminate the cost of relocating utility facilities, or if elimination is not feasible, to minimize the relocation costs to the maximum extent reasonably possible." (Emphasis added.) During oral argument, IPUC admitted that it has no authority to order "other parties" to use their best efforts to minimize relocation costs. Those other parties would include ACHD and entities which are not utilities regulated by IPUC. It stated that the language is based upon Idaho Code § 40-210(2). Although the legislature has the authority to order public highway agencies to use their best efforts to minimize the cost of relocating utility facilities, IPUC does not have that authority. We therefore set aside Section 11. I.C. § 61-629.

## IV. CONCLUSION

We set aside Sections 10 and 11 of the amendments to Rule H approved in IPUC Order No. 30955. We award costs on appeal to appellant.

Justices BURDICK, J. JONES, HORTON and J. Pro Tem TROUT **CONCUR**.

12